IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ASHFAQ HUSSAIN, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. 1:17-CV-00625-TWP-MPB |
| LSF9 MASTER PARTICIPATION TRUST, CALIBER HOME LOANS, INC., and U.S. BANK TRUST, N.A., as Trustee of LSF9 MASTER PARTICIPATION TRUST, | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – CLASS ACTION**

LSF9 Master Participation Trust ("LSF9"), Caliber Home Loans, Inc. ("Caliber"), and U.S. Bank, N. A., as Trustee for LSF9 Master Participation Trust ("U.S. Bank") (collectively, "Defendants"), by and through their attorneys Barnes & Thornburg LLP and Perkins Coie LLP, respectfully submit this brief in support of their motion to dismiss the putative Complaint – Class Action filed on February 28, 2017 (the "Complaint") by Plaintiff Ashfaq Hussain.

**PRELIMINARY STATEMENT**

The Plaintiff's Complaint should be dismissed for two reasons. *First*, Plaintiff has failed to plead actionable violations of the Federal Debt Collection Practices Act (FDCPA). The allegations in this case arise from a "Debt Validation Notice" (the "DVN") sent by Caliber, a mortgage servicer, to the Plaintiff. Specifically, Plaintiff incorrectly alleges that the DVN violates the FDCPA because it: 1) implies that borrowers must request a verification in writing; 2) implies that borrowers must pay for a payoff statement in order to obtain certain information; and 3) is confusing in that it tells the borrower to send a request to the "above referenced"

address, when the address follows shortly thereafter. However, as explained more fully below, these allegations conflict with the plain language of the DVN and the relevant statutes. Simply put, the Complaint should be dismissed because the DVN was in full compliance with the FDCPA. Consequently, Plaintiff has failed to state a valid claim.

*Second*, even assuming for the sake of argument, that the DVN violates the FDCPA, the case should be dismissed because Plaintiff lacks standing due to his failure to allege an actual, concrete injury. As the Supreme Court recently confirmed in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016), a statutory violation – even one that gives rise to statutory damages – does not automatically confer standing if the violation did not cause an injury-in-fact to the plaintiff. Here, Plaintiff does not allege any cognizable injury-in-fact. For example, Plaintiff does not claim that he was charged an improper amount as a result of the alleged FDCPA violations. Nor does he claim to have requested a verification of the debt, disputed the debt, requested a payoff statement, been charged for a payoff statement, or otherwise relied on problematic language in the DVN. Rather, Plaintiff makes the threadbare allegation that he suffered undefined "informational" injury—an allegation that is far too vague and conclusory to confer standing. Accordingly, the Complaint should be dismissed because it fails to state a valid claim, and because Plaintiff lacks standing.

Finally, Defendants respectfully submit that this case must be viewed in the context of the larger and repetitive litigation campaign being waged against Defendants by Plaintiff's counsel (Edelman, Combs, Latturner & Goodwin, LLC). This is the most recent of four pending putative class actions commenced by the Edelman firm against Defendants.[1] Each case involves allegations that DVNs sent by Caliber contain technical violations of the FDCPA. In fact, the

---

[1] The other three cases are *Michael Carbone v. Caliber Home Loans, Inc. et al.*, Case No. 15-cv-4919 (E.D.N.Y.), *Janine Carbone v. Caliber Home Loans, Inc.*, Case No. 15-cv-05190 (E.D.N.Y.) and *Robert Grosz et al. v. Caliber Home Loans, Inc. et al.*, 16-cv-04035 (E.D.N.Y.).

alleged violations in the instant case are virtually identical to those alleged in the *Grosz* class action pending in the Eastern District of New York. Notably, none of the cases—including the instant case—involve allegations that any homeowners have suffered monetary injury, reliance injury or other cognizable injury-in-fact.[2] The reason for this proliferation of putative class action suits is that Plaintiff's counsel seeks to take advantage of language in the FDCPA concerning the collection of statutory damages and reasonable attorney's fees in each class action. *See* 15 U.S.C. § 1692k(a)(2)(B), (C). In other words, by filing multiple cases, Plaintiff's counsel seeks to increase the odds of a payout by multiplying the number of times it could recover FDCPA statutory damages — thereby improperly imposing multiple, overlapping liabilities on Defendants.

## FACTUAL BACKGROUND

### I. Plaintiff's Underlying Loan

The Complaint alleges that "[t]his action concerns the servicing and collection of an alleged residential mortgage loan debt incurred for personal, family, or household purposes." Compl. ¶ 23. Specifically, Plaintiff alleges that he obtained this residential mortgage loan ("the Loan") to finance the purchase of his primary residence in 1994, and that he refinanced the Loan in 2003.[3] Compl. ¶¶ 24-25. Plaintiff and his wife allegedly lived in the residence through 2007, after which time they maintained the home as a rental property without refinancing the Loan. Compl. ¶ 26. Plaintiff alleges that, in 2014, Federal National Mortgage Association owned the

---

[2] The Court may take judicial notice of matters of public record without converting the motion into one for summary judgment. *Hens on v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (considering public court documents filed in earlier Indiana state case); *see also Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."). For the Court's convenience, the docket sheets and amended complaints for the *Michael Carbone*, *Janine Carbone*, and *Grosz* cases are attached to the April 24, 2017 Declaration of Jalina J. Hudson in Support of Defendants' Motion to Dismiss, which is attached as <u>Exhibit A</u> hereto.

[3] The Complaint does not allege that Plaintiff is the owner of the Note; however, a redacted version of the Note appears to have been signed by Plaintiff on June 13, 2003. *See* Compl., Ex. D.

Loan and was servicing it. Compl. ¶¶ 27-28. In 2016, the Federal National Mortgage Association allegedly accelerated the Loan and commenced a foreclosure lawsuit in its name against Plaintiff.[4] Compl. ¶ 29. Although the Complaint contains no allegations specifying when or how the Defendants acquired any interest or rights in the Loan, Plaintiff alleges that the Loan "was in default when [D]efendants first had any involvement with it." Compl. ¶ 30. Finally, Plaintiff alleges that, in late 2016, he was sent three notices by Caliber and "the prior servicer" of the Loan. Compl. ¶¶ 31-33. Those notices are: 1) a notice of servicing transfer sent by Seterus, Inc.; 2) a notice of servicing transfer sent by Caliber; and 3) a DVN sent by Caliber.

## II.     The Seterus Notice of Servicing Transfer

First, Plaintiff claims that on or about September 12, 2016, Seterus, Inc. – which was the Loan's servicer at the time – sent him a Notice of Servicing Transfer ("the Seterus Notice of Transfer"). Compl. ¶ 31, Ex. A. The Seterus Notice of Transfer states that effective October 1, 2016, the servicing of the Loan would be transferred from Seterus, Inc. to Caliber. Compl., Ex. A. The Seterus Notice of Transfer also provides the address to which payments should be sent as of the transfer date, and the contact information for Caliber if the borrowers have any questions. In relevant part, the Seterus Notice of Transfer states:

> If you have any questions for either your present servicer, Seterus, Inc.[,] or your new servicer CALIBER HOME LOANS, INC[.], about your mortgage loan or this transfer, please contact them using the information below between Monday [and] Thursday: 8:00 a.m. – 9:00 p.m., Central Time or Friday: 8:00 a.m. – 7:00 p.m. Central Time:

---

[4]  The Complaint contains no allegations regarding the status or outcome of that foreclosure lawsuit, whether the Loan remains in default, or whether Federal National Mortgage Association (or any other entity) has taken any action since July 2016 in connection with the alleged default or foreclosure.

>                     New Servicer:
>                     CALIBER HOME LOANS, INC[.]
>                     Customer Service
>                     800.570.6768

Compl., Ex. A. Plaintiff does not allege that the Seterus Notice of Transfer was inaccurate, misleading, or otherwise flawed.

### III.  The Caliber Notice of Servicing Transfer

Plaintiff also alleges that on or about October 11, 2016, Caliber also sent a "Notice of Servicing Transfer" (the "Caliber Notice of Transfer) to Plaintiff. Compl. ¶ 32, Ex. B. Consistent with the Seterus Notice of Transfer, the Caliber Notice of Transfer states that the servicing of the Loan transferred from Seterus, Inc. to Caliber as of October 1, 2016. Compl., Ex. B. Like the Seterus Notice of Transfer, the Caliber Notice of Transfer provides the contact information for Caliber if the borrowers have any questions. Compl., Ex. B. In relevant part, the Caliber Notice of Transfer states:

> If you have any questions for either your prior servicer, Seterus, Inc., or your new servicer, Caliber Home Loans, about your mortgage loan or this transfer, please contact them using the information below:
>
> **New Servicer**
>
> **Caliber Home Loans**
> **1-800-570-6768**
> **P.O. Box 24610**
> **Oklahoma City, OK 73124**

Compl., Ex. C (emphasis added). Plaintiff does not allege that the Caliber Notice of Transfer was deficient, inaccurate, misleading, or otherwise flawed.

### IV.  The Debt Validation Notice ("DVN")

Finally, Plaintiff alleges that on or about October 14, 2016, Caliber sent the document attached as Exhibit C [to the Complaint], which was "intended to comply with" the FDCPA and

is purportedly a form document. Compl. ¶¶ 33-35. This notice, which is commonly referred to as a "Debt Validation Notice" or "DVN," provides Plaintiff with certain information concerning their outstanding debt on the Loan. Compl., Ex. C. Specifically, the DVN provides the amount of the principal balance, accrued interest through October 13, 2016, and other applicable fees and costs. Compl., Ex. C. The DVN also clarifies that it is not a "payoff statement," but informs borrowers how they can obtain a payoff statement. Compl., Ex. C. The DVN states:

> We are not requesting that you pay the entire loan balance and this is not a payoff statement. If you wish to pay off the entire amount of the loan, please contact us for a payoff statement because that balance may differ because of interest, late charges, servicing fees and other charges. **A charge for the statement may apply as permitted by state law.**

Compl., Ex. C (emphasis added). In line with its purpose, the DVN also informs borrowers how to dispute the validity of the debt. In so doing, the one-page DVN highlights the following language in a dark font and bold letters.

> You have thirty (30) days upon receipt of this letter to dispute the validity of the debt or any part of it. If you do not dispute it within that period, we will assume that the debt is valid. If you dispute the debt, please contact us in writing to the above referenced address, and we will mail to you or your authorized representative verification of the debt. Verification of the debt will include all documents signed by you concerning the debt, a payment history of the debt which includes the dates and amount of payments, credits, balances and charges concerning the debt, the name and address of the original creditor, and a copy of any judgment against you regarding the debt. If, within thirty (30) days after the date you receive this letter, you request in writing the name and address of your original creditor, we will furnish you with that information. **Please send written requests to: Caliber Home Loans, Inc., P.O. Box 24610, Oklahoma City, OK 73124-0610.** If you need additional information, please call us at 1-800-570-6768 or visit our website at www.CaliberHomeLoans.com.

Compl., Ex. C (additional emphasis added). Notably, the address provided in the DVN is the same as the address provided in the Caliber Notice of Transfer when instructing borrowers how

to contact Caliber if they have any questions. The body of the DVN does not contain any other address for borrowers to contact. The only other address contained in the DVN is the return address, which is appears in small font next to the Caliber logo at the top left corner of the DVN. Compl., Ex. C. To emphasize that the address should only be used for returning mail, the DVN states:

> FOR RETURN SERVICE ONLY
> P.O. Box 619063
> Dallas, TX 75261-9063

Compl., Ex. E (emphasis in original).

## V. The Purported FDCPA Violations

The Complaint broadly alleges that Defendants violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692f, 1692f(1) and 1692g of the FDCPA. Compl. ¶ 39. Failing to provide any analysis and underscoring the conclusory nature of the allegations, Plaintiff copies these sections of the FDCPA and simply pastes them into the Complaint. Compl. ¶¶ 40-42. Apparently, the sole basis of the Complaint is the allegedly misleading or inaccurate nature of the DVN. In particular, Plaintiff claims that the DVN violated the FDCPA because it: (1) implies that recipients must pay for a payoff statement in order to get information required by § 1692g [of the FDCPA]; (2) states that a request for verification must be in writing; and (3) is confusing in that it tells the recipient to send a request for verification to the "above address" when the correct address is listed below in the letter. Compl. ¶ 39. Plaintiff does not allege that any of the disclosures required by the FDCPA are missing, nor does Plaintiff allege that any other document – aside from the DVN – is deficient, inaccurate, misleading, or otherwise flawed. Plaintiff also vaguely claims that he suffered "informational injury" in that he was deprived of accurate information and provided inaccurate information about the exercise of his rights as required by the FDCPA. Compl. ¶ 43. Plaintiff does not allege that he made any effort to obtain

a verification or a payoff statement, that he was actually charged any amount in connection with a payoff statement, or that he was actually misled into sending a written request to the wrong address.

Plaintiff purports to bring this action on behalf of all individuals who were sent the DVN on or after August 13, 2016 and on or before a date 20 days before the filing of this action. Compl. ¶46. Plaintiff states that on "information and belief, based on the form, bar-coded documents, and the size of the portfolios acquired by the [D]efendants, there are over 40 members of the class." Compl. ¶ 46. Ultimately, Plaintiff claims to seek unspecified statutory damages and attorney's fees. Compl. ¶ 50.

## ARGUMENT

**I.** **<u>Legal Standard</u>**

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). While the Court must accept "well-pleaded factual allegations" as true, it should not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Fed. R. Civ. P. 12(b)(6) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

The plausibility standard embedded in Rule 12(b)(6) requires "the plaintiff [to] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Instead, where a complaint "pleads facts

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief'." *Id*. (quoting *Twombly*, 550 U.S. at 557). A complaint does not meet this standard if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557. When a complaint fails to state a claim upon which relief may be granted, this deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (citations omitted).

Finally, in reviewing FDCPA cases, the Seventh Circuit has found that mere "anecdotal proclamations" of confusion, deception, or being misled will not suffice as a matter of law. Specifically, the Circuit has held:

> a mere claim of confusion is not enough: a plaintiff must show that the challenged language of the letters unacceptably increases the level of confusion. Under this standard, a plaintiff's anecdotal proclamations of being confused will not suffice: a collection letter cannot be confusing as a matter of law or fact "unless a **significant fraction of the population** would be similarly misled."

*Durkin v. Equifax Check Servs., Inc.,* 406 F.3d 410, 415 (7th Cir. 2005) (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc*., 211 F.3d 1057, 1060 (7th Cir. 2000) (emphasis added).

## II.     The FDCPA Requirements and Prohibitions

In general, the FDCPA prohibits debt collectors from engaging in abusive, deceptive, and unfair debt collection practices, and imposes upon debt collectors certain disclosure and notice requirements. *See Bartlett v. Heibl,* 128 F.3d 497 (7th Cir. 1997); *see also* 15 U.S.C. § 1692(e) (stating that the purpose of the statute is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."). To assert a claim under the FDCPA, a Plaintiff must satisfy three threshold requirements: (1) Plaintiff was a consumer who owed a debt; (2) the

notices were sent by a "debt collector"; and (3) the debt collector's act or omission violated the FDCPA. *See Bartlett* at 501.

Within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector is required to send a written notice to consumers containing the following information:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). The FDCPA also prohibits a debt collector from making "any false, deceptive, or misleading representation[s]" in connection with the collection of a debt, including "false representations of any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e.

### III. In Accordance with the FDCPA, the DVN Correctly Informs Borrowers That a Request for Verification of the Debt Must Be in Writing

The FDCPA expressly states that a consumer must notify a debt collector in writing in order to receive a verification of the debt. Specifically, 15 U.S.C. § 1692g(a) requires a debt collector to send borrowers a written notice with the following information:

(3) a statement that unless the consumer, **within thirty days after receipt of the notice, disputes the validity of the debt,** or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer **notifies the debt collector in writing** within the thirty-day period that the debt, or any portion thereof, is disputed, **the debt collector will obtain verification of the debt** or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

15 U.S.C. § 1692g(a) (emphasis added). Here, the Complaint incorrectly claims that the DVN violates the FDCPA because it states that a "request for verification must be in writing." Compl. ¶ 39. To the contrary, 15 U.S.C. § 1692g(a)(4) explicitly *requires* a request for verification of the debt to be in writing. Indeed, while some circuit courts are split[5] on how to interpret some FDCPA requirements, there is <u>no</u> dispute as to § 1692g(a)(4)'s requirement that a request for verification must be in writing. *See, e.g., Hooks v. Forman, Holt, Eliades & Ravin, LLC,* 717 F.3d 282, 286 (2d Cir. 2013) (holding that § 1692g(a)(3) of the FDCPA does not impose a writing requirement to dispute a debt, <u>because</u> other sections, such as § 1692g(a)(4), expressly impose a writing requirement). Accordingly, the DVN complies with the FDCPA by correctly informing borrowers that a request for verification of the debt must be in writing. Thus, Plaintiff's allegation is plainly contrary to black letter law and must be dismissed.

## IV. The DVN Does Not Violate the FDCPA As It Accurately States That a Fee May Apply in Accordance with State Law

Under Indiana law, a creditor or mortgage servicer must provide an accurate payoff amount in writing within seven days of receiving a written request for a payoff statement:

---

[5] While there is a Circuit split on whether § 1692g(a)(3) of the FDCPA requires a consumer's dispute of a debt to be in writing, the Complaint makes no such allegation. Moreover, the Seventh Circuit has found that a writing requirement exists for "debt disputes" brought under § 1692g. *See Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 419 (7th Cir. 2005) (finding no violation of the FDCPA where the plaintiff claimed that "Equifax unfairly obscured the 'in-writing' requirement for debt disputes brought under § 1692g.").

> The creditor or mortgage servicer shall provide, in writing, an accurate payoff amount for the consumer loan to the debtor within seven (7) business days (excluding legal public holidays, Saturdays, and Sundays) after the creditor or mortgage servicer receives the debtor's written request for the accurate consumer loan payoff amount. A payoff statement provided by a creditor or mortgage servicer under this subsection must include the date the statement was prepared and the payoff amount as of that date, **including an itemization of each fee, charge, or other sum included within the payoff amount**.

Ind. Code § 24-4.5-3-209 (emphasis added). Accordingly, the payoff statement must include an itemization of each fee or charge in connection with the payoff amount, including fees that may be charged in connection with providing the payoff statement.

Here, Plaintiff makes no allegation that he requested a payoff statement. Nor does he allege that Defendants charge or have charged him, or anyone else, any fees in connection with a payoff statement. Instead, the DVN unequivocally states that "[a] charge for the [payoff] statement *may* apply *as permitted by state law*." Compl., Ex. C (emphasis added). Since Indiana law requires an itemization of fees and charges on the payoff statement, and there is no allegation that Defendants charge any fees in connection with a payoff statement, that DVN's statement that a fee "*may*" apply is neither misleading nor inaccurate. Tellingly, the DVN contains no obligatory terminology such as "must" or "required," and it therefore does not imply that the borrower *must* do anything. Accordingly, Plaintiff's allegations that the DVN implies that the recipient must pay for a payoff statement in order to get information required by § 1692g is entirely meritless and should be dismissed.

V. **Consistent with the Seterus Notice of Transfer and the Caliber Notice of Transfer, the DVN Provides Borrowers' with Accurate Contact Information**

Plaintiff's final allegation complains that the DVN is "confusing in that it tells the recipient to send a request for verification to the 'above address'" when the address is listed shortly thereafter in the letter. Compl. ¶ 39. This assertion fails, particularly where the address

for sending correspondence is, in fact, the <u>only</u> address provided in the body of the DVN, the correct address is highlighted in bold, dark typeface in the DVN, and Defendants' correct contact information has been consistently provided in the Seterus Notice of Transfer and the Caliber Notice of Transfer.

As noted above, in relevant-part, the Seterus Notice of Transfer states:

> If you have any questions for either your present servicer, Seterus, Inc.[,] or your new servicer CALIBER HOME LOANS, INC[.], about your mortgage loan or this transfer, please contact them using the information below between Monday [and] Thursday: 8:00 a.m. – 9:00 p.m., Central Time or Friday: 8:00 a.m. – 7:00 p.m. Central Time:
>
> New Servicer:
> CALIBER HOME LOANS, INC[.]
> Customer Service
> 800.570.6768

Compl., Ex. A. Plaintiff does not allege that the Seterus Notice of Transfer was inaccurate, misleading, or otherwise flawed. In addition, the Caliber Notice of Transfer states:

> If you have any questions for either your prior servicer, Seterus, Inc., or your new servicer, Caliber Home Loans, about your mortgage loan or this transfer, please contact them using the information below:
>
> **New Servicer**
> **Caliber Home Loans**
> **1-800-570-6768**
> **P.O. Box 24610**
> **Oklahoma City, OK 73124**

Compl., Ex. B (emphasis added). Plaintiff does not allege that the Caliber Notice of Transfer was deficient, inaccurate, misleading, or otherwise flawed. Instead, the Caliber Notice of Transfer provides the correct contact information for Caliber.

Although the DVN states, "[i]f you dispute the debt, please contact us in writing to the above referenced address, and we will mail to you or your authorized representative verification

of the debt," the correct address for correspondence is provided shortly after that sentence. The DVN continues by saying, "Please send written requests to: Caliber Home Loans, Inc., P.O. Box 24610, Oklahoma City, OK 73124-0610," which is the same address provided in the Caliber Notice of Transfer. Compl. Exs. B, C. The mentioning of an "above referenced" address is, at worst, an immaterial typographical error when the correct address is expressly provided in the same, bold paragraph instructing borrowers how to dispute a debt and request a verification of the debt.[6]

Moreover, that address is the only address in the body of the DVN. Indeed, the only other address, which appears in small font next to the Caliber logo at the top left corner of the DVN, is the return address. To emphasize that the address is only used for returning mail, rather than sending mail, the return address in the top left corner states in all capital letters that it is "FOR RETURN SERVICE ONLY." Compl., Ex. C (emphasis in original). On its own, the DVN is not confusing in instructing borrowers how to send correspondence and requests to Caliber, and the DVN is consistent with the Seterus Notice of Transfer and the Caliber Notice of Transfer when providing that contact information. Accordingly, no reasonable consumer, however unsophisticated, would be confused as to which address should be used for correspondence, and Plaintiff's allegation should be dismissed.

## VI. Plaintiff Does Not Allege an Injury-in-Fact, and Therefore Lacks Standing to Bring This Action

Plaintiff alleges only that he suffered an "informational injury." Compl. ¶ 43. However, Plaintiff does not describe the nature of the "informational" injury, nor does he explain how or why the alleged misinformation he received was in any way injurious. Moreover, as noted above, Plaintiff does not claim that he was *actually* charged an inappropriate amount or that he

---

[6] Notably, Plaintiff does not allege that he was *actually* confused or *actually* wrote to the wrong address.

was *actually* misled into sending a written request for information to the wrong address. Thus, the alleged "informational injury" is merely speculative and insufficient to satisfy the threshold for standing. It is well-settled that in order for a plaintiff to have standing to sue a defendant, the plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130 (1992) (internal quotation marks and citations omitted). Specifically, an "injury in fact" is an invasion of a legally protected interest which is (a) "concrete and particularized", and (b) "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L.Ed. 2d 635 (2016), *as revised* (May 24, 2016) (internal citations omitted).

In *Spokeo,* the Supreme Court recently confirmed that a plaintiff cannot maintain a lawsuit if an alleged statutory violation did not give rise to an injury in fact. Similar to the Plaintiff in this case, the plaintiff in *Spokeo* alleged that the defendant violated his rights under the Fair Credit Reporting Act ("FCRA"). Like the FDCPA, the FCRA provides for actual or statutory damages. As is the case here, the *Spokeo* plaintiff commenced a lawsuit based on the premise that a technical statutory violation involving allegedly inaccurate or deficient information is sufficient to establish standing, regardless of whether the violation actually caused the plaintiff to suffer injury. Specifically, the plaintiff alleged that inaccurate information about his credit damaged his employment prospects. The Supreme Court, however, rejected the plaintiff's argument finding it to be merely speculative and not rooted in any evidence. Since the plaintiff did not allege any "actual or imminent harm," he could not establish standing to bring suit against the defendant. In fact, the Supreme Court expressly held that the mere violation of a statute is insufficient to establish an actual injury. The Court stated:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. ***Article III standing requires a concrete injury even in the context of a statutory violation***. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Spokeo*, 136 S. Ct. 1549 (emphasis added).

The *Spokeo* Court further explained that the injury–in-fact requirement was not satisfied simply because the plaintiff alleged that he had a personal interest in the handling of his credit information, or because his statutory rights "are individualized, rather than collective." *Id.* at 1546. The Court determined that such allegations are not "concrete" enough to establish injury in fact. Although a concrete injury in fact does not need to be tangible, it "must be '*de facto*' that is, it must actually exist . . . [meaning the injury must be] 'real,' and not 'abstract.'" *Id.* at 1548 (internal citations omitted). To provide guidance on what may be concrete harm, the Court noted that the risk of real harm could potentially satisfy the requirement of concreteness. *Id.* at 1549. The Court explained, however, that not all procedural violations or inaccuracies present harm or a risk of harm. The Court provided the example that "even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate," and therefore present no material harm or risk of harm. *Id.* at 1550. In another example the Court stated "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

Here, the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Even if the DVN violated the

law, which it does not, Plaintiff fails to assert how the alleged statutory violations cause him to suffer any purported injury, and thus his Complaint should be dismissed.

## CONCLUSION

For the all of the foregoing reasons, Defendants respectfully request that the Court dismiss the Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and grant Defendants all other just and proper relief.

Respectfully submitted,

Dated: April 24, 2017

*/s/ Edward M. Smid*
Manny J. Caixeiro (pro hac vice)
Jalina J. Hudson (pro hac vice)
PERKINS COIE LLP
30 Rockefeller Plaza, 22th Floor
New York, NY 10112-0085
Phone: 212.262.6900
mcaixeiro@perkinscoie.com
jhudson@perkinscoie.com

Michael H. Gottschlich (#22668-49)
Edward M. Smid (#30134-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Phone: 317.236.1313
Fax: 317.231.7433
mgottschlich@btlaw.com
edward.smid@btlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>Daniel A. Edelman
>Cathleen M. Combs
>Michelle A. Alyea
>Edelman, Combs, Latturner
>  & Goodwin, LLC
>courtecl@edcombs.com
>ccombs@edcombs.com
>malyea@edcombs.com
>
>Robert E. Duff
>Indiana Consumer Law Group
>The Law Office of Robert E. Duff
>robert@robertdufflaw.com

>*/s/ Edward M. Smid*