IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ASHFAQ HUSSAIN, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. 1:17-CV-00625-TWP-MPB |
| LSF9 MASTER PARTICIPATION TRUST, CALIBER HOME LOANS, INC., and U.S. BANK TRUST, N.A., as Trustee of LSF9 MASTER PARTICIPATION TRUST, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF JALINA J. HUDSON
IN SUPPORT OF MOTION TO DISMISS**

JALINA J. HUDSON, an attorney duly admitted to practice law in the State of New York, affirms the truth of the following under penalties of perjury:

1.      I am an attorney with the firm of Perkins Coie LLP, as counsel for Defendants. I make this Declaration in support of Defendants' motion to dismiss.

2.      I have been admitted to this Court *pro hac vice* in connection with the above-captioned case.

3.      The purpose of this Declaration is to put before this Court copies of documents that are referenced in the accompanying motion.

4.      Attached hereto as **Exhibit 1** is a true and correct copy of the docket in the matter of Janine Carbone (*Janine Carbone v. Caliber Home Loans, Inc.*, No. 2:15-cv-05190-JS-GRB (E.D.N.Y. September 8, 2015)(Amended Complaint filed October 31, 2016).

5.      Attached hereto as **Exhibit 2** is a true and correct copy of the Amended Complaint with exhibits in the matter of Janine Carbone.

-1-

135343459.2

6.     Attached hereto as **Exhibit 3** is a true and correct copy of the docket in the matter of Michael Carbone (*Michael K. Carbone v. Caliber Home Loans, Inc., et al.*, No. 2:15-cv-04919-JS-ARL (E.D.N.Y. August 20, 2015)(amended Complaint filed October 23, 2015).

7.     Attached hereto as **Exhibit 4** is a true and correct copy of the Amended Complaint with exhibits in the matter of Michael Carbone.

8.     Attached hereto as **Exhibit 5** is a true and correct copy of the docket in the matter of Robert Grosz (*Robert and Chaya Grosz v. LSF 9 Master Participation Trust et al.*, No. 2:15-cv-05190-JS-GRB (E.D.N.Y. July 20, 2016)(amended Complaint filed November 23, 2016).

9.     Attached hereto as **Exhibit 6** is a true and correct copy of the Amended Complaint with exhibits in the matter of Grosz.


Dated:  New York, New York
        April 24, 2017

                                        */s/ Jalina J. Hudson*
                                        JALINA J. HUDSON

# EXHIBIT 1

# U.S. District Court
## Eastern District of New York (Central Islip)
## CIVIL DOCKET FOR CASE #: 2:15-cv-05190-JS-GRB

Carbone v. Caliber Home Loans, Inc.
Assigned to: Judge Joanna Seybert
Referred to: Magistrate Judge Gary R. Brown
Cause: 15:1692 Fair Debt Collection Act

Date Filed: 09/08/2015
Jury Demand: Plaintiff
Nature of Suit: 480 Consumer Credit
Jurisdiction: Federal Question

## Plaintiff

**Janine Carbone**
*on behalf of plaintiff and a class*

represented by **Abraham Kleinman**
Kleinman, LLC
626 RXR Plaza
Uniondale, NY 11556-0626
516-522-2621
Fax: 888-522-1692
Email: akleinman@kleinmanllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany N. Hardy**
Edelman Combs Latturner & Goodwin LLC
20 South Clark Street
Suite 1500
Chicago, IL 60603
(312)739-4200
Fax: (312)419-0379
Email: thardy@edcombs.com
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**Caliber Home Loans, Inc.**

represented by **David t. Biderman**
Perkins Coie LLP
1888 Century Park East
Suite 1700
Los Angeles, CA 90067
310-788-9900
Fax: 310-788-3399
Email: dbiderman@perkinscoie.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Frederick Rivera**
Perkins Coie LLP
1201 3rd Avenue
Suite 4900
Seattle, WA 98101
206-359-8000
Fax: 206-359-9000

Email: frivera@perkinscoie.com
*TERMINATED: 03/17/2017*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jalina Joy Hudson**
Perkins Coie
30 Rockefeller Plaza, 22nd Floor
New York, NY 10112
212-261-6856
Fax: 212-399-8056
Email: jhudson@perkinscoie.com
*ATTORNEY TO BE NOTICED*

**Manny Joseph Caixeiro**
Perkins Coie LLP
30 Rockefeller Plaza, 22nd Floor
New York, NY 10112
212-262-6900
Fax: 212-977-1649
Email: mcaixeiro@perkinscoie.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/08/2015 | 1 | COMPLAINT against Caliber Home Loans, Inc. Was the Disclosure Statement on Civil Cover Sheet completed -No,, filed by Janine Carbone. (Attachments: # 1 Civil Cover Sheet) (Rodin, Deanna) (Entered: 09/09/2015) |
| 09/08/2015 | 2 | Summons Issued as to Caliber Home Loans, Inc.. (Rodin, Deanna) (Entered: 09/09/2015) |
| 09/08/2015 | | FILING FEE: $ 400.00, receipt number 18493 (Rodin, Deanna) (Entered: 09/09/2015) |
| 09/09/2015 | 3 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link:http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. **Do NOT return or file the consent unless all parties have signed the consent.** (Rodin, Deanna) (Entered: 09/09/2015) |
| 09/09/2015 | 4 | Notice of Related Case indicated on the civil cover sheet in case 15-CV-5190(JMA) (GRB). (Rodin, Deanna) (Entered: 09/09/2015) |
| 09/09/2015 | 5 | NOTICE of Appearance by Tiffany N. Hardy on behalf of Janine Carbone (aty to be noticed) (Hardy, Tiffany) (Entered: 09/09/2015) |
| 09/09/2015 | 6 | MOTION for pre motion conference - *Letter to Judge Azrack Requesting a Pre-Motion Conference regarding Plaintiff's Anticipated Motion for Class Certification* by Janine Carbone. (Hardy, Tiffany) (Entered: 09/09/2015) |
| 09/09/2015 | 7 | Amended MOTION for pre motion conference re 6 MOTION for pre motion conference - *Letter to Judge Azrack Requesting a Pre-Motion Conference regarding Plaintiff's* |

| | | |
|---|---|---|
| | | *Anticipated Motion for Class Certification (Plaintiff's first letter stated it was filed via Hand Delivery when it was exclusively filed via ECF)* by Janine Carbone. (Hardy, Tiffany) (Entered: 09/09/2015) |
| 09/11/2015 | | ORDER REASSIGNING CASE. Case reassigned to Judge Joanna Seybert as related to 15cv4919 for all further proceedings. Judge Joan M. Azrack no longer assigned to case Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such.. Ordered by Chief Judge Carol Bagley Amon on 9/11/2015. (Bowens, Priscilla) (Entered: 09/11/2015) |
| 09/21/2015 | 8 | SUMMONS Returned Executed by Janine Carbone. Caliber Home Loans, Inc. served on 9/10/2015, answer due 10/1/2015. (Kleinman, Abraham) (Entered: 09/21/2015) |
| 09/28/2015 | 9 | NOTICE of Appearance by Manny Joseph Caixeiro on behalf of Caliber Home Loans, Inc. (aty to be noticed) (Caixeiro, Manny) (Entered: 09/28/2015) |
| 09/28/2015 | 10 | Letter MOTION for Extension of Time to File *Response to Complaint* by Caliber Home Loans, Inc.. (Caixeiro, Manny) (Entered: 09/28/2015) |
| 09/29/2015 | | ELECTRONIC ORDER granting 10 Motion for Extension of Time to File. The time for defendant to respond to the Complaint is extended to October 12, 2015. Ordered by Magistrate Judge Gary R. Brown on 9/29/2015. c/ecf (Johnston, Linda) (Entered: 09/29/2015) |
| 10/12/2015 | 11 | Corporate Disclosure Statement by Caliber Home Loans, Inc. identifying Corporate Parent LSF6 Service Operations, LLC, Corporate Parent LSF6 Service Holdings, L.P. for Caliber Home Loans, Inc.. (Caixeiro, Manny) (Entered: 10/12/2015) |
| 10/12/2015 | 12 | Motion to Dismiss for Failure to State a Claim by Caliber Home Loans, Inc.. (Attachments: # 1 Memorandum in Support) (Caixeiro, Manny) (Entered: 10/12/2015) |
| 10/12/2015 | 13 | MEMORANDUM in Support re 12 Motion to Dismiss for Failure to State a Claim *CORRECTED VERSION* filed by Caliber Home Loans, Inc.. (Caixeiro, Manny) (Entered: 10/12/2015) |
| 10/26/2015 | 14 | RESPONSE in Opposition re 12 Motion to Dismiss for Failure to State a Claim filed by Janine Carbone. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Hardy, Tiffany) (Entered: 10/26/2015) |
| 11/02/2015 | 15 | REPLY in Support re 12 Motion to Dismiss for Failure to State a Claim filed by Caliber Home Loans, Inc.. (Caixeiro, Manny) (Entered: 11/02/2015) |
| 11/18/2015 | 16 | MOTION for Leave to Appear Pro Hac Vice *of Frederick B. Rivera* Filing fee $ 150, receipt number 0207-8180224. by Caliber Home Loans, Inc.. (Attachments: # 1 Affidavit Of Movant Frederick B. Rivera In Support Of Motion to Admit Pro Hac Vice With Attached Certificate Of Good Standing, # 2 Proposed Order Granting Motion to Admit Pro Hac Vice) (Rivera, Frederick) (Entered: 11/18/2015) |
| 11/19/2015 | | ELECTRONIC ORDER granting 16 Motion for Leave to Appear Pro Hac Vice. Frederick B. Rivera is directed to register for ECF, and electronically file a notice of appearance. Ordered by Magistrate Judge Gary R. Brown on 11/19/2015. c/ecf (Johnston, Linda) (Entered: 11/19/2015) |
| 11/20/2015 | 17 | MOTION for Leave to Appear Pro Hac Vice *for David T. Biderman* Filing fee $ 150, receipt number 0207-8185403. by Caliber Home Loans, Inc.. (Attachments: # 1 Affidavit Of Movant David T. Biderman In Support OF Motion To Admit Counsel Pro Hac Vice With Certificate of Good Standing, # 2 Proposed Order) (Biderman, David) (Entered: 11/20/2015) |

| | | |
|---|---|---|
| 11/23/2015 | | ELECTRONIC ORDER granting 17 Motion for Leave to Appear Pro Hac Vice. David T. Biderman is directed to register for ECF, and electronically file a notice of appearance. Ordered by Magistrate Judge Gary R. Brown on 11/23/2015. c/ecf (Johnston, Linda) (Entered: 11/23/2015) |
| 11/23/2015 | 18 | NOTICE of Appearance by Frederick Rivera on behalf of Caliber Home Loans, Inc. (notification declined or already on case) (Rivera, Frederick) (Entered: 11/23/2015) |
| 11/23/2015 | 19 | NOTICE of Appearance by David t. Biderman on behalf of Caliber Home Loans, Inc. (notification declined or already on case) (Biderman, David) (Entered: 11/23/2015) |
| 07/13/2016 | | ORDER terminating 6 Motion for Pre-Motion Conference; terminating 7 Motion for Pre-Motion Conference. Motions were made to Judge Joan M. Azrack, who formerly presided over this case, just before the reassignment. Under this Court's individual rules, such motions re: class certification are not applicable. Ordered by Judge Joanna Seybert on 7/13/2016. (Baran, Charles) (Entered: 07/13/2016) |
| 08/31/2016 | 20 | Letter MOTION for Leave to File *New Proposed Discovery Schedule and Proposed Briefing Schedule* by Janine Carbone. (Hardy, Tiffany) (Entered: 08/31/2016) |
| 09/02/2016 | 21 | RESPONSE in Opposition re 20 Letter MOTION for Leave to File *New Proposed Discovery Schedule and Proposed Briefing Schedule* filed by Caliber Home Loans, Inc.. (Caixeiro, Manny) (Entered: 09/02/2016) |
| 09/23/2016 | | ELECTRONIC ORDER granting 20 Motion for Leave to File. Plaintiff's motion for leave to file a proposed discovery schedule and proposed briefing schedule for her motion for class certification (Docket Entry 20) is GRANTED to the extent that Plaintiff shall be permitted to submit a proposed discovery schedule and briefing schedule, if necessary, after the Court determines the pending motion to dismiss (Docket Entry 12). Ordered by Judge Joanna Seybert on 9/23/2016. (Seibert, Kristin) (Entered: 09/23/2016) |
| 09/30/2016 | 22 | MEMORANDUM & ORDER granting 12 Motion to Dismiss for Failure to State a Claim; Defendant's motion to dismiss (Docket Entry 12) is GRANTED. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE and with leave to replead. If Plaintiff wishes to file an Amended Complaint, she must do so within thirty (30) days of the date of this Memorandum and Order. If she fails to do so, her claims will be dismissed with prejudice. So Ordered by Judge Joanna Seybert on 9/30/2016. C/ECF (Valle, Christine) (Entered: 10/04/2016) |
| 10/31/2016 | 23 | AMENDED COMPLAINT against Caliber Home Loans, Inc., filed by Janine Carbone. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Hardy, Tiffany) (Entered: 10/31/2016) |
| 11/14/2016 | 24 | Motion to Dismiss for Failure to State a Claim */ Notice of Motion To Dismiss Plaintiff's Amended Class Action Complaint* by Caliber Home Loans, Inc.. (Caixeiro, Manny) (Entered: 11/14/2016) |
| 11/14/2016 | 25 | MEMORANDUM in Support re 24 Motion to Dismiss for Failure to State a Claim */ Notice of Motion To Dismiss Plaintiff's Amended Class Action Complaint* filed by Caliber Home Loans, Inc.. (Caixeiro, Manny) (Entered: 11/14/2016) |
| 11/28/2016 | 26 | RESPONSE in Opposition re 24 Motion to Dismiss for Failure to State a Claim */ Notice of Motion To Dismiss Plaintiff's Amended Class Action Complaint* filed by Janine Carbone. (Hardy, Tiffany) (Entered: 11/28/2016) |
| 12/05/2016 | 27 | REPLY in Support re 24 Motion to Dismiss for Failure to State a Claim */ Notice of Motion To Dismiss Plaintiff's Amended Class Action Complaint* filed by Caliber Home Loans, Inc.. (Caixeiro, Manny) (Entered: 12/05/2016) |

| 03/07/2017 | 28 | NOTICE of Appearance by Jalina Joy Hudson on behalf of Caliber Home Loans, Inc. (aty to be noticed) (Hudson, Jalina) (Entered: 03/07/2017) |
| 03/16/2017 | 29 | NOTICE by Caliber Home Loans, Inc. *Notice of Withdrawal of Counsel* (Rivera, Frederick) (Entered: 03/16/2017) |
| 03/17/2017 | | ORDER: Attorney Frederick Rivera terminated.. Ordered by Magistrate Judge Gary R. Brown on 3/17/2017. (McMorrow, Karen) (Entered: 03/17/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/24/2017 11:57:20 | | |
| **PACER Login:** | pc4686:3743954:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:15-cv-05190-JS-GRB |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

# EXHIBIT 2

Case 1:17-cv-00625-TWP-MPB   Document 25-1   Filed 04/24/17   Page 10 of 57 PageID
Case 2:15-cv-05190-JS-GRB   Document 25   Filed 10/31/16   Page 1 of 11 PageID #: 153
#: 165

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- x
JANINE CARBONE,                            :
on behalf of plaintiff and a class,        :
                                           :
                    Plaintiff,             :        Case No. 15-CV-5190(JS)(GRB)
                                           :
            vs.                            :
                                           :
CALIBER HOME LOANS, INC.;                  :
                                           :
                    Defendant.             :
-------------------------------------------------------- x
```

### FIRST AMENDED COMPLAINT – CLASS ACTION

### INTRODUCTION

1.      Plaintiff Janine Carbone brings this action to secure redress from unlawful

credit and collection practices engaged in by defendant Caliber Home Loans, Inc. ("Caliber").

2.      Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C.

§1692 et seq. ("FDCPA").

### VENUE AND JURISDICTION

3.      This Court has jurisdiction under  15 U.S.C. §1692k (FDCPA), 28  U.S.C. §1331

and 28 U.S.C. §1337.

4.      Venue and personal jurisdiction in this District are proper because: (a) this action

concerns real property within the District; (b) Defendant's communications and notices were

received by plaintiff  within this District; and (c) Defendant does or transacts business within this

District and claims an interest in loans alleged owed by persons in this District and secured by

real property in this District.

### PARTIES

5.      Plaintiff Janine Carbone is an individual who resides in a single-family home

which she owns (with her husband) in Nassau County, New York.

6.      Plaintiff is a consumer as defined by the FDCPA §1692a(3).

1

7.      Defendant Caliber is a Delaware corporation with offices at 3701 Regent Blvd., Suite 200, Irving, Texas.  It does business in New York.  Its registered agent and office is CT Corporation System, 111 8th Ave., New York, New York  10011.

8.      Caliber is a "special servicer" of residential mortgage loans and seeks rating as such from rating agencies such as Fitch and S&P in order to obtain "special servicing" business. Caliber advertises its ratings on its web site.

9.      In mortgage industry jargon, a "special servicer" is a servicer that specializes in handling delinquent and defaulted mortgage loans.

10.      According to S&P's rating opinion, Caliber serviced $32 billion in residential loans  as of Aug. 31, 2013.   As of June 20, 2013, when the total balance was less, it was servicing over 92,000 loans.

11.      Caliber regular acquires servicing of loans that are delinquent or in default at the time of such acquisition.  On information and belief, it has over 4500 such loans.

12.      Caliber acquires servicing of portfolios or groups of similar loans, rather than individual loans.

13.      Caliber uses the mails and telephone system to collect such debts.

14.      Caliber is a debt collector as defined in 15 U.S.C.  §1692a(6).

## **FACTS**

15.      Plaintiff has a residential mortgage loan serviced by Caliber.  The loan is secured by plaintiff's residence and was obtained for personal, family or household purposes, namely housing. Plaintiff signed the mortgage.  Plaintiff's husband signed the Note.

16.       Pursuant to the terms of the mortgage (Exhibit A) plaintiff is referred to as "Borrower".

17.      Pursuant to the terms of the Mortgage: the Borrowers (Plaintiff) has the following obligations to pay money: To Make Monthly Payment for Taxes and Insurance, Pay Charges Assessments and Claims, Maintain Hazard Insurance or Property Insurance, to Maintenance and

Case 1:17-cv-00625-TWP-MPB Document 25-1 Filed 04/24/17 Page 3 of 57 PageID
#: 167
Case 2:15-cv-09350-JS-GWB Document 25-1 Filed 03/16/17 Page 3 of 12 PageID #: 953

Protection of the Property and Fulfill Lease Obligations.

18. As a mortgagor Plaintiff has the equity of redemption which is the right to redeem the property by paying the principal, interests and costs owed on the Note.

19. Upon information and belief, in connection with the mortgage loan at issue here, plaintiff received Federal Truth-In-Lending Disclosure Statements. (Exhibit B).

20. Caliber obtained servicing of the loan in late 2014. Attached as Exhibit C is the notice of transfer of servicing, dated November 10, 2014.

21. At the time, the loan was delinquent.

22. On or about December 18, 2014, Caliber sent plaintiff the document attached as Exhibit D.

23. Exhibit D is a form document, filled out in a standardized manner.

24. Exhibit D informs the consumer of (a) the amount required to cure the default and (b) the possibility of negotiating a loan modification or other resolution.

25. Curing the default involves the payment of money to defendants.

26. A loan modification or similar resolution would also result in the payment of money.

27. No "notice of debt" was sent to plaintiff until June 10, 2015 (Exhibit E).

28. Exhibit E alters the statutory language of the FDCPA "notice of debt" to state, "If you do notify us of a dispute, we will obtain verification of the debt and mail it to you", and "Also, upon your request, within thirty (30) days, we will provide you with the name and address of the original creditor if different from the current creditor."

29. The statute requires that such requests be in writing to preserve the consumer's rights. Defendant eliminates the writing requirement from its notice.

### COUNT I – FDCPA – CLASS CLAIM

30. Plaintiff incorporates paragraphs 1-29.

31. Exhibit C does not contain the disclosures required by 15 U.S.C. §1692g.

Case 1:17-cv-00625-TWP-MPB   Document 25-1   Filed 04/24/17   Page 13 of 57 PageID
Case 2:15-cv-08290-JS-GWB   Document 25-1   Filed 10/31/16   Page 4 of 41 PageID #: 168
#: 168

32.   No other document sent to plaintiff before or within 5 days after <u>Exhibit D</u>
contains such disclosures.

33.   Section 1692g provides:

**§ 1692g.  Validation of debts**

**(a) Notice of debt; contents.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--**

**(1) the amount of the debt;**

**(2) the name of the creditor to whom the debt is owed;**

**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**

**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**(b) Disputed debts.  If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not**

**(c) Admission of liability.  The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.**

4

Case 1:17-cv-00625-TWP-MPB Document 25-1 Filed 04/24/17 Page 14 of 57 PageID
Case 2:15-cv-09290-JS-GWB Document 25-1 Filed 10/01/16 Page 5 of 11 PageID #: 95
#: 169

**(d) Legal pleadings.** A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

**(e) Notice provisions.** The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [*26 USCS §§ 1* et seq.], title V of Gramm-Leach-Bliley Act [*15 USCS §§ 6801* et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

## CLASS ALLEGATIONS

34. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ.P. 23(a) and (b)(3).

35. The class consists of (a) all natural persons (b) whose correspondence address, according to the records of Caliber, is the same as the property address, (c) which property contains one or two dwelling units (including condominium and cooperative apartments), (d) to whom Caliber sent a letter in the form represented by Exhibit D (e) without sending the "notice of debt" (15 U.S.C. §1692g) before or within 5 days after Exhibit D, (f) where the letter in the form of Exhibit D was sent on or after a date one year prior to the filing of this action, and (g) on or before a date 21 days after the filing of this action.

36. On information and belief, based on the size of defendant's operations and the use of form documents, the class exceeds 40, and is so numerous that joinder of all members is not practicable.

37. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether defendant complies with 15 U.S.C. §1692g.

38. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

39. Plaintiff will fairly and adequately represent the interests of the class members.

Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

40.     A class action is superior to other alternative methods of adjudicating this dispute, in that: (a) Individual cases are not economically feasible; (b) Many debtors may not realize that their rights are violated; and (c) Congress intended class actions as a principal means of enforcing the FDCPA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendant for:

(1)     A declaration that defendant's communication violates the FDCPA;

(2)     Statutory damages;

(3)     Attorney's fees, litigation expenses and costs of suit;

## COUNT II – FDCPA – CLASS CLAIM

41.     Plaintiff incorporates paragraphs 1-29.

42.     Exhibit E misstates the disclosures required by 15 U.S.C. §1692g and is misleading in violation of by 15 U.S.C. §1692e and 1692e(10).

43.     Section 1692e provides:

**§ 1692e.        False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: .. .**

**(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

## CLASS ALLEGATIONS

44.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ.P. 23(a) and (b)(3).

45.     The class consists of (a) all natural persons (b) whose correspondence address,

Case 1:17-cv-00625-TWP-MPB   Document 25-1   Filed 04/24/17   Page 16 of 57 PageID
Case 2:15-cv-09250-JS-GRB   Document 25-1   Filed 10/31/16   Page 7 of 11 PageID #: 155
#: 171

according to the records of Caliber,  is the same as the property address, (c) which property

contains one or two dwelling units (including condominium and cooperative apartments),  (d) to

whom Caliber sent a letter in the form represented by <u>Exhibit E</u> (e) where the letter in the form

of <u>Exhibit E</u> was sent on or after a date one year prior to the filing of this action, and (g) on or

before a date 21 days after the filing of this action.

46.    On information and belief, based on the size of defendant's operations and the

use of form documents,  the class exceeds 40, and is so numerous that joinder of all members is

not practicable.

47.    There are questions of law and fact common to the class members, which

common questions predominate over any questions that affect only individual class members.

The predominant common question is whether <u>Exhibit E</u> complies with 15 U.S.C.  §1692g.

48.    Plaintiff's claim is typical of the claims of the class members.  All are  based  on

the same factual and legal theories.

49.    Plaintiff will fairly and adequately represent the interests of the class members.

Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

50.    A class action is superior to other alternative methods of adjudicating this dispute,

in that: (a) Individual cases are not economically feasible; (b) Many debtors may not realize that

their rights are violated; and (c) Congress intended class actions as a principal means of

enforcing the FDCPA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and

the class members and against defendant for:

(1)    A declaration that defendant's communication violates the

FDCPA;

(2)    Statutory damages;

(3)    Attorney's fees, litigation expenses and costs of suit;

s/Tiffany N. Hardy
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

Abraham Kleinman
KLEINMAN LLC
626 RXR Plaza
Uniondale, NY 11556-0626
(516) 522-2621
(888) 522-1692 (fax)
akleinman@akleinmanllc.com

### NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.


<u>s/Tiffany N. Hardy</u>
Tiffany N. Hardy


<u>s/Tiffany N. Hardy</u>
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

s/Tiffany N. Hardy
Tiffany N. Hardy


Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## CERTIFICATE OF SERVICE

I Tiffany N. Hardy, hereby certify that on October 31, 2016, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system and notification of such filing was sent to the following parties:

Abraham Kleinman
akleinman@kleinmanllc.com

Manny Joseph Caixeiro
mcaixeiro@perkinscoie.com

Brian P. Hennessy
bhennessy@perkinscoie.com

David T. Biderman
dbiderman@perkinscoie.com

Frederick Rivera
frivera@perkinscoie.com

s/Tiffany N. Hardy
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)

# EXHIBIT A

Generated by TallPDF.NET Evaluation

Return To:
Capital One Home Loans, LLC

7311 W. 132nd Street Ste
300, Overland Park, KS 66213
Prepared By:
Shawna Adams
7311 W. 132nd Street Ste 300
Overland Park, KS 66213

This is to certify that this is a true, full and
correct copy of the original.

By: _____
Capital One Settlement Services, LLC

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE <small>MIN</small> 1003932-2006057291-1

WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated    March 23, 2006
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."  Michael K. Carbone and Janine M. Carbone, His Wife



whose address is 3388 Maplewood Drive South, Wantagh, NY 11793

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender."  Capital One Home Loans, LLC

will be called "Lender." Lender is a corporation or association which exists under the laws of
the United States of America    . Lender's address is  7311 W. 132nd Street Ste
300, Overland Park, KS 66213

| Section: | Block | Lot: | Unit: |
|---|---|---|---|
| 2006057291 | | 2006057291 | 0 |

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3033 1/01

VMP®-6A(NY) (0308)
Page 1 of 17    MW 05/08 01    Initials: _____
VMP Mortgage Solutions, Inc. (800)521-7291

Copy of Mortgage (DOT)

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

(E) "Note." The note signed by Borrower and dated     March 23, 2006     , will be called the "Note." The Note shows that I owe Lender Four Hundred Sixty Four Thousand And no/100

                               Dollars (U.S. $ 464,000.00          ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by     April 1, 2036     .

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

2006057291                   2006057291                       Initials                 0

(VMP) -6A(NY) (0508)                       Page 2 of 17                          Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

## LEGAL DESCRIPTION

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE TOWN OF HEMPSTEAD, CITY OF WANTAGH, COUNTY OF NASSAU, AND STATE OF NEW YORK, TO WIT:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED SITUATE, LYING AND BEING AT WANTAGH, IN THE TOWN OF HEMPSTEAD, COUNTY OF NASSAU AND STATE OF NEW YORK, KNOWN AND DESIGNATED AS AND BY THE LOT NO. 11 BLOCK 219 ON MAP, "MAP OF WANTAGH CENTRE, SITUATED AT WANTAGH, NASSAU COUNTY, NEW YORK, SURVEYED MARCH 1948 BY BALDWIN & CORNELIUS CO. INC., C.E.&S.", AND FILED IN THE OFFICE OF THE CLERK OF THE COUNTY OF NASSAU ON JUNE 23, 1948 AS MAP NO. 4554, WHICH SAID LOT IS MORE PARTICULARLY BOUNDED AND DESCRIBED ACCORDING TO SAID MAP AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF BEECH STREET AT THE EXTREME SOUTHERLY END OF THE ARC OF A CURVE CONNECTING THE WESTERLY SIDE OF BEECH STREET WITH THE SOUTHERLY SIDE OF SHIEBER ROAD SOUTH (SOUTH MAPLEWOOD DRIVE);

RUNNING THENCE SOUTH 13 DEGREES 11 MINUTES 30 SECONDS WEST ALONG THE WESTERLY SIDE OF BEECH STREET 55.0 FEET;
THENCE NORTH 76 DEGREES 48 MINUTES 30 SECONDS WEST 100.0 FEET;
NORTH 13 DEGREES 11 MINUTES 30 SECONDS EAST 65.0 FEET TO THE SOUTHERLY SIDE OF SHIEBER ROAD SOUTH;
THENCE SOUTH 76 DEGREES 48 MINUTES 30 SECONDS EAST ALONG THE SOUTHERLY SIDE OF SHIEBER ROAD SOUTH 90.0 FEET TO THE EXTREME WESTERLY END OF THE ARC OF SAID CURVE CONNECTING THE SOUTHERLY SIDE OF SHIEBER ROAD SOUTH WITH THE WESTERLY SIDE OF BEECH STREET; RUNNING THENCE SOUTHERLY ALONG THE ARC OF SAID CURVE BEARING TO THE LEFT HAVING A RADIUS OF 10 FEET A DISTANCE OF 15.71 FEET TO THE EXTREME SOUTHERLY END THEREOF, ON THE WESTERLY SIDE OF BEECH STREET, AT THE POINT OR PLACE OF BEGINNING.

TAX ID #: ▮▮▮▮▮▮

BY FEE SIMPLE DEED FROM CORT RASKOPF AND ELIZABETH RASKOPF, HIS WIFE AS SET FORTH IN DEED BOOK 9563, PAGE 823 AND RECORDED ON 6/27/1984, NASSAU COUNTY RECORDS.

THE SOURCE DEED AS STATED ABOVE IS THE LAST RECORD OF VESTING FILED FOR THIS PROPERTY. THERE HAVE BEEN NO VESTING CHANGES SINCE THE DATE OF THE ABOVE REFERENCED SOURCE.

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 3388 Maplewood Drive South

|Street|

Wantagh                    |City, Town or Village|, New York     11793     |Zip Code|
This Property is in NASSAU                                                County. It has the following legal
description:
See Attached

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

2006057291                    2006057291              Initials _____          0

VMC -6A(NY) (0509)            Page 3 of 17                              Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

COVENANTS

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

2006057291                    2006057291                    Initials: _____    0

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. Monthly Payments For Taxes And Insurance

(a) Borrower's Obligations

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

2006057291                          2006057291              Initials _____         0

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

2006057291                    2006057291                    0

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

2006057291                              2006057291                                    0

-6A(NY) (0505)                     Page 7 of 17          Initials _UR_/o_          Form 3033 1/01

Generated by TallPDF.NET Evaluation

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender any of my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Borrower's Obligations to Occupy The Property. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

2006057291                          2006057291                                              0

-6A(NY) (0508)                       Page 6 of 17                   Initials                 Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

8. Borrower's Loan Application. If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information). Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of false, misleading, or inaccurate statement of important information.

9. Lender's Right to Protect Its Rights In The Property. If: (a) I do not keep my promises and agreements made in this Security Instrument, (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

2006057291                                2006057291                    Initials: NL PC              0

VMP -6A(NY) (0506)                        Page 8 of 17                                     Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid in the order provided for in Section 2. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

2006057291                           2006057291                                                          0

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons, or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

2006057291                    2006057291              Initials: _____              0

VMP®-6A(NY) (0506)              Page 11 of 17                          Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. Loan Charges. Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. Notices Required under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Law That Governs this Security Instrument; Word Usage. This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights If the Property is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

2006057291                          2006057291                                                     0

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30 day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

2006057291                    2006057291                                              0

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights if Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

2006057291                    2006057291                                              0

VMP -6A(NY) (0506)                    Page 14 of 17              Initials _____          Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

2006057291                          2006057291                                        0

-6A(NY) (0506)                       Page 15 of 17            Initials                 Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____ (Seal)
                                  Michael K. Carbone         -Borrower

_____          _____ (Seal)
                                  Janine M. Carbone          -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                                    -Borrower

2006057291                    2006057291                        0

VMP-6A(NY) (0506)             Page 18 of 17              Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

STATE OF NEW YORK,          Nassau          County ss.

   On the    23rd    day of    March, 2006          before me, the undersigned, a notary
public in and for said state, personally appeared  Michael K. Carbone  and  Janine M.
Carbone

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Samantha Rampas
Notary Public

Tax Map Information: 57-219-11

SAMANTHA ROUMPAS
NOTARY PUBLIC, State of New York
No. 01RO6131430
Qualified in Nassau County
Commission Expires August 1, 2009

2006057291                  2006057291                                    0

-6A(NY) (0508)              Page 17 of 17          Initials              Form 3033 1/01

Click here to unlock TallPDF.NET

Recording Requested By:
**T.D. SERVICE COMPANY**

And When Recorded Mail To:
**T.D. Service Company**
**4000 W Metropolitan Dr Ste 400**
**Orange, CA  92868**

_____ Space above for Recorder's use _____
MERS MIN#: ▊▊▊▊▊▊▊▊      PHONE#: **(888) 679-6377**
Customer#: ▊▊▊   Service#: ▊▊▊▊▊▊   ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖+

Loan#: 9803926212

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR CAPITAL ONE HOME LOANS, LLC, ITS SUCCESSORS AND ASSIGNS, P.O. BOX
2026, FLINT, MI 48501 OR 1901 E VOORHEES ST, SUITE C, DANVILLE, IL  61834-0000, hereby assign
and transfer to LSF9 MASTER PARTICIPATION TRUST, C/O CALIBER HOME LOANS, INC. 13801
WIRELESS WAY, OKLAHOMA CITY, OK  73134-2550, all its right, title and interest in and to said
Mortgage in the amount of **$464,000.00**, recorded in the State of **NEW YORK**, County of **NASSAU** Official
Records, dated **MARCH 23, 2006** and recorded on **APRIL 25, 2006, as Instrument No. —, in Book No.**
▊▊▊▊, at Page No. 511.
Executed by: **MICHAEL K. CARBONE AND JANINE M. CARBONE, HIS WIFE** (Original Mortgagor).
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
FOR CAPITAL ONE HOME LOANS, LLC.** Property Address: **3388 MAPLEWOOD DRIVE SOUTH,
WANTAGH, NY 11793-0000.** ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ **Assignments: There are no
assignments of record for this loan.**
The assignee is not acting as a nominee of the mortgagor and that the mortgage continues to secure a bonafide
obligation.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") WHOSE ADDRESS IS 1901 E.
VOORHEES STREET, SUITE C, DANVILLE, IL, 61834, P O BOX 2026, FLINT, MI, 48501-2026

Loan#: ▬▬▬▬  Srv#: ▬▬▬▬▬
Page 2

Date: **DEC 1 8 2014**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CAPITAL ONE HOME LOANS, LLC, ITS SUCCESSORS AND ASSIGNS**

By: _____

**Sarah Kennedy, Assistant Secretary**

This Assignment is not subject to the requirements of new section 275 of the real property law because it is an assignment with the secondary mortgage market.

State of    **CALIFORNIA**                  }
County of   **ORANGE**                      } ss.

On **DEC 1 8 2014** before me, Jamie Van Keirsbelk, a Notary Public, personally appeared Sarah Kennedy who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of ORANGE , County of **ORANGE** State of **CALIFORNIA** . I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____

(Notary Name): Jamie Van Keirsbelk

JAMIE VAN KEIRSBELK
COMM. # 2013677
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My comm. expires March 21, 2017

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CAPITAL ONE HOME LOANS, LLC, ITS SUCCESSORS AND ASSIGNS** and officer located at P.O. BOX 2026, FLINT, MI 48501 OR 1901 E VOORHEES ST, SUITE C, DANVILLE, IL 61834-0000

PREPARED BY: T.D. Service Company, 4000 W Metropolitan Dr Ste 400
 Orange, CA 92868, JAMIE VAN KEIRSBELK

# EXHIBIT B

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

APPLICATION #: ████████98    03/23/06

LOAN #:
Capital One Home Loans, LLC
7311 W. 132nd Street Ste 300
Overland Park, KS 66213

—— Borrowers ——
Michael K. Carbone
Janine M. Carbone

3388 Maplewood Drive South
Wantagh, NY 11793

—— Property ——
3388 Maplewood Drive South
Wantagh, NY 11793

—— Itemization of Amount Financed ——

| | | |
|---|---|---|
| $ | 460,870.91 | Total amount financed | $ 460,870.91 |

| $ | | |
|---|---|---|
| $ | 1,252.80 | Loan discount |
| $ | 500.00 | Application/Closing Fee |
| $ | 10.00 | Life of Loan Flood Cert. |
| $ | 80.00 | Tax Service Fee |
| $ | 500.00 | Processing Fee |
| $ | 406.29 | Interim Interest |
| $ | 275.00 | Settlement or closing fee |
| $ | 30.00 | Payoff Delivery Fee |
| $ | 50.00 | Express Mail Charges |
| $ | 25.00 | Assignment Mortgage/DOT |
| $ | 3,129.09 | Total prepaid finance charges | $ 3,129.09 |

| $ | 468,075.96 | Existing Liens |
|---|---|---|
| $ | 350.00 | Appraisal fee |
| $ | 15.00 | Credit Report |
| $ | 10.00 | Initial flood Determinati |
| $ | 30.00 | Tax Certification Fee |
| $ | 1,979.00 | Title Insurance |
| $ | 192.50 | Recording fees |
| $ | 1,160.00 | City/county tax/stamps |
| $ | 3,682.00 | State tax/stamps |
| $ | 475,494.46 | Total amount paid to others |

LOAN AMOUNT    $    464,000.00

THE FIRST PAYMENT FOR YOUR
3 YEAR-6 MONTH LIBOR ARM

FOR:    $ 464,000.00
AT:    7.990000%
WHICH WILL PAY OFF IN    360 PAYMENTS

IS BROKEN DOWN AS FOLLOWS:

| | | |
|---|---|---|
| PRINCIPAL &/OR INTEREST | $ | 3,401.43 |
| Mortgage Insurance | | 0.00 |
| Taxes | | 0.00 |
| Insurance | | 0.00 |
| Other | | 0.00 |
| TOTAL PAYMENT | $ | 3,401.43 |

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.5971% | $ 839,837.94 | $ 460,870.91 | $ 1,300,708.85 |

—— Your Payment Schedule Will Be: ——

36 payments monthly of $    3,401.43  beginning May 1, 2006
323 payments monthly of $    3,636.60  beginning May 1, 2009
1 payment of $    3,635.57 due on April 1, 2036

**SECURITY INTEREST:** You are giving a security interest in the real property located at
3388 Maplewood Drive South , Wantagh, NY
**LATE CHARGE:** Payments more than 15 days late will be charged a late fee of 2% of the payment amount.
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.
If you pay off early, you will not be entitled to a refund of any part of the prepaid finance charge.
**ASSUMPTION:** Someone buying your home cannot assume the remainder of the
mortgage on the original terms.
**THIS OBLIGATION:** Will NOT have a demand feature.
Your loan contains a variable-rate feature. Disclosures about the variable-rate feature have been provided to you earlier.

*The possibility of a prepayment penalty does not apply to loans made in the following states: Maine, New York, North
Carolina, South Carolina, and West Virginia.

Insurance: You may obtain property insurance from anyone you want that is acceptable to Lender
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date,
prepayment refunds and penalties.

* means an estimate

I (We) hereby acknowledge receiving a completed copy of this disclosure.

Date 3, 23 06

_____
Michael K. Carbone

_____
Janine M. Carbone

ICS/MWRGZ1//6/92/LASER

| A. SETTLEMENT STATEMENT | U.S. Department of Housing and Urban Development | |
|---|---|---|

**B. Type of Loan**

| 1. ☐ FHA  2. ☐ FmHA  3. ☒ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|
| 4. ☐ VA  5. ☐ Conv. Ins. | 2006057291 | 2006057291 | 03/01/2006 |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Michael K. Carbone<br>Janine M. Carbone<br><br>3388 Maplewood Drive South<br>Wantagh, NY 11793 | | Capital One Home Loans, LLC<br><br>7311 W. 132nd Street Ste 300<br>Overland Park, KS 66213 |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 3388 Maplewood Drive South<br>Wantagh, NY 11793 | Capital One Settlement Services, LLC | |
| | Place of Settlement<br>12900 Foster, Suite 250<br>Overland Park, KS 66213 | I. Settlement Date<br>closed:<br>03/23/06<br>disbursed:<br>03/28/06 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 10,197.59 | 403. | |
| 104. | | 404. | |
| 105. Existing Liens | 468,075.96 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes to | | 406. City/town taxes to | |
| 107. County taxes to | | 407. County taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | 478,273.55 | 420. Gross Amount Due To Seller | |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 464,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. Other Equity | | 505. Payoff of second mortgage loan | |
| 206. Costs Paid by Seller | | 506. | |
| 207. | | 507. | |
| 208. Credit Deposit | 13,113.55 | 508. | |
| 209. LENDER PAID CONTRIBUTION | 1,160.00 | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes to | | 510. City/town taxes to | |
| 211. County taxes to | | 511. County taxes to | |
| 212. Assessments to | | 512. Assessments to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 478,273.55 | 520. Total Reduction Amount Due Seller | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross Amount due from borrower (line 120) | 478,273.55 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | ( 478,273.55 ) | 602. Less reductions in amt. due seller (line 520) | ( ) |
| 303. Cash ☒ From ☐ To Borrower | 0.00 | 603. Cash ☐ To ☐ From Seller | 0.00 |

HUD-1 (3-86)
RESPA, HB 4305.2

**L. Settlement Charges**

| 700. Total Sales/Broker's Commission based on price $ | | | @ | % = | | Paid From Borrowers' Funds at Settlement | Paid From Sellers' Funds at Settlement |
|---|---|---|---|---|---|---|---|
| Division of Commission (line 700) as follows: | | | | | | | |
| 701. $ | | to | | | | | |
| 702. $ | | to | | | | | |
| 703. Commission paid at Settlement | | | | | | | |
| 704. | | | | | | | |
| **800. Items Payable in Connection With Loan** | | | | | | | |
| 801. Loan Origination Fee | 0.0000 | % | to Capital One Home Loans, LLC | | | | |
| 802. Loan Discount | 0.2700 | % | to Capital One Home Loans, LLC | | | 1,252.80 | |
| 803. Appraisal Fee | | to | Capitol Commonwealth Apprl Corp, Inc | | 350.00 | p.o.c. | |
| 804. Credit Report | | to | Credco | | | 15.00 | |
| 805. Lender's Inspection Fee | | | to C & S Marketing | | | | |
| 806. Mortgage Insurance Application Fee to | | | | | | | |
| 807. Assumption Fee | | | | | | | |
| 808. Application/Closing Fee | | | to Capital One Home Loans, LLC | | | 500.00 | |
| 809. | | | | | | | |
| 810. | | | | | | | |
| 811. Life of Loan Flood Cert. | | | to First American Flood Data Services | | | 10.00 | |
| 812. Tax Service Fee | | | to Capital One Home Loans, LLC | | | 80.00 | |
| 813. Underwriting Fee | | | to Capital One Home Loans, LLC | | | | |
| 814. Processing Fee | | | to Capital One Home Loans | | | 500.00 | |
| 815. Doc Prep Fee | | | to Capital One Home Loans, LLC | | | | |
| 816. Initial Flood Determinati | | | to First American Flood Data Services | | | 10.00 | |
| 817. Direct Mtg Broker Fee | | | | | | | |
| **900. Items Required By Lender To Be Paid In Advance** | | | | | | | |
| 901. Interest from 03/28/06 to 04/01/06 | @$ 101.5715 /day | | | | | 406.29 | |
| 902. Mortgage Insurance Premium for | | months to | | | | | |
| 903. Hazard Insurance Premium for | 1 years to | Allstate | | | 1,022.00 | p.o.c. | |
| 904. | | years to | | | | | |
| 905. | | | | | | | |
| **1000. Reserves Deposited With Lender** | | | | | | | |
| 1001. Hazard insurance | | months@$ | per month | | | | |
| 1002. Mortgage insurance | | months@$ | per month | | | | |
| 1003. City property taxes | | months@$ | per month | | | | |
| 1004. County property taxes | | months@$ | per month | | | | |
| 1005. Annual assessments | | months@$ | per month | | | | |
| 1006. | | months@$ | per month | | | | |
| 1007. | | months@$ | per month | | | | |
| 1008. | | months@$ | per month | | | | |
| 1009. | | | | | | | |
| **1100. Title Charges** | | | | | | | |
| 1101. Settlement or closing fee | to | Capital One Settlement Services | | | | 275.00 | |
| 1102. Abstract or title search | to | Title Agency | | | | | |
| 1103. Title examination | to | LandAmerica Onestop | | | | | |
| 1104. Title insurance binder | to | LandAmerica OneStop | | | | 30.00 | |
| 1105. Document preparation | to | Document Preparer Company | | | | | |
| 1106. Notary fees | to | | | | | | |
| 1107. Attorney's fees | to | | | | | | |
| (includes above items numbers: | | | | | ) | | |
| 1108. Title insurance | to | LandAmerica Onestop | | | | 1,979.00 | |
| (includes above items numbers: | | | | | ) | | |
| 1109. Lender's coverage | $ | $64,000.00 | premium: 1,979.00 | | | | |
| 1110. Owner's coverage | $ | | | | | | |
| 1111. Payoff Delivery Fee | | Title Company | | | | 30.00 | |
| 1112. Express Mail Charges | | Capital One Settlement Services | | | | 50.00 | |
| 1113. Title Curative Fee | | Title Agency | | | | | |
| **1200. Government Recording and Transfer Charges** | | | | | | | |
| 1201. Recording fees: Deed $ | : Mortgage$ 142.00 | ; Releases $ 50.50 | | | | 192.50 | |
| 1202. City/county tax/stamps: Deed $ | : Mortgage $ | | | | | 1,160.00 | |
| 1203. State tax/stamps: Deed $ | : Mortgage $ | | | | | 3,682.00 | |
| 1204. Assignment Mortgage/DOT | Capital One Home Loans, LLC | | | | | 25.00 | |
| 1205. Mortgage Cert Fee | | | | | | | |
| **1300. Additional Settlement Charges** | | | | | | | |
| 1301. Survey | to | | | | | | |
| 1302. Pest inspection | to | | | | | | |
| 1303. Overnight Courier Fees | | | | | | | |
| 1304. Automated Underwriting | | Capital One Home Loans, LLC | | | | | |
| 1305. Funding Fee | | Capital One Home Loans, LLC | | | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | | | | | 10,197.59 | |

Michael R. Carbone    3-23-06

Betina M. Carbone    3-23-06

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

March 23, 2006                    Overland Park                    Kansas
[Date]                              [City]                          [State]

3388 Maplewood Drive South   ,Wantagh,NY 11793
[Property Address]

1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 461,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Capital One Home Loans, LLC

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     7.9900    %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the first day of each month beginning on     May 1, 2006
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     April 1, 2036           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at P.O. Box 403589, Atlanta, GA 30384-3589
or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 3,401.43          . This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
2006057291

2006057291

0

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT

-838N (0210)   VMP 10/02 01        Form 3520 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4                    Initials: _____

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

**Borrowers**

Michael K. Carbone
Janine M. Carbone

3388 Maplewood Drive S
Wantagh, NY 11793

APPLICATION #: [redacted]          03/23/06
LOAN #:
Capital One Home Loans, LLC
7311 W. 132nd Street Ste 300
Overland Park, KS 66213

**Property**
3388 Maplewood Drive South
Wantagh, NY 11793

## Itemization of Amount Financed

| | | |
|---|---|---|
| $ | 113,990.00 | Total amount financed | $ 113,990.00 |
| $ | 1,160.00 | Loan discount | |
| $ | 500.00 | Application/Closing Fee | |
| $ | 275.00 | Settlement or closing fee | |
| $ | 50.00 | Express Mail Charges | |
| $ | 25.00 | Assignment Mortgage/DOT | |
| $ | 2,010.00 | Total prepaid finance charges | $ 2,010.00 |
| $ | 13,113.55 | Shortage of 1st | |
| $ | 94,140.00 | Existing Liens | |
| $ | 350.00 | Appraisal fee | |
| $ | 6.00 | Initial Flood Determinati | |
| $ | 130.00 | Title insurance | |
| $ | 109.00 | Recording fees | |
| $ | 290.00 | City/county tax/stamps | |
| $ | 898.00 | State tax/stamps | |
| $ | 109,036.55 | Total amount paid to others | |

LOAN AMOUNT     $   116,000.00

THE FIRST PAYMENT FOR YOUR
EQ FIXED RATE BALLOON

FOR:      $  116,000.00
AT:          13.200000%
WHICH WILL PAY OFF IN   180 PAYMENTS

IS BROKEN DOWN AS FOLLOWS:

| | | |
|---|---|---|
| PRINCIPAL &/OR INTEREST | $ | 1,301.35 |
| Mortgage Insurance | | 0.00 |
| Taxes | | 0.00 |
| Insurance | | 0.00 |
| Other | | 0.00 |
| TOTAL PAYMENT | $ | 1,301.35 |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 13.4766% | $  222,045.64 | $  113,990.00 | $  336,035.64 |

**Your Payment Schedule Will Be:**

179 payments monthly of $   1,301.35  beginning April 28, 2006
1 payment of $  103,093.99 due on March 28, 2021

**SECURITY INTEREST:** You are giving a security interest in the real property located at
  3388 Maplewood Drive South      , Wantagh, NY
**LATE CHARGE:** Payments more than 15 days late will be charged a late fee of 2% of the payment amount.
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.
  If you pay off early, you will not be entitled to a refund of any part of the prepaid finance charge.
**ASSUMPTION:** Someone buying your home cannot assume the remainder of the
  mortgage on the original terms.
**THIS OBLIGATION:** Will NOT have a demand feature.

*The possibility of a prepayment penalty does not apply to loans made in the following states: Maine, New York, North
Carolina, South Carolina, and West Virginia.

Insurance: You may obtain property insurance from anyone you want that is acceptable to Lender.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date,
prepayment refunds and penalties.

* means an estimate

I (We) hereby acknowledge receiving a completed copy of this disclosure.          Date 3 / 23/ 06

_____          _____
Michael K. Carbone                        Janine M. Carbone

**A. SETTLEMENT STATEMENT**

U.S. Department of Housing
and Housing and Urban Development

| B. Type of Loan | | |
|---|---|---|
| 1. ☐ FHA  2. ☐ FmHA  3. ☒ Conv. Unins.<br>4. ☐ VA  5. ☐ Conv. Ins. | 6. File Number<br>2006057292 | 7. Loan Number<br>2006057292 | 8. Mortgage Insurance Case Number<br>03/01/2006 |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Michael K. Carbone<br>Janine M. Carbone<br><br>3388 Maplewood Drive S<br>Wantagh, NY 11793 | | Capital One Home Loans, LLC<br><br>7311 W. 132nd Street Ste 300<br>Overland Park, KS 66213 |

| G. Property Location | H. Settlement Agent |
|---|---|
| 3388 Maplewood Drive South<br>Wantagh, NY 11793 | Capital One Settlement Services, LLC |

| | Place of Settlement<br>12900 Foster, Suite 250<br>Overland Park, KS 66213 | I. Settlement Date<br>closed:<br>03/23/06<br>disbursed:<br>03/28/06 |
|---|---|---|

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 3,443.00 | 403. | |
| 104. Shortage of 1st | 13,113.55 | 404. | |
| 105. Existing Liens | 94,140.00 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes  to | | 406. City/town taxes  to | |
| 107. County taxes  to | | 407. County taxes  to | |
| 108. Assessments  to | | 408. Assessments  to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | 110,696.55 | 420. Gross Amount Due To Seller | |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 116,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. Other Equity | | 505. Payoff of second mortgage loan | |
| 206. Costs Paid by Seller | | 506. Seller paid closing costs | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. LENDER PAID CONTRIBUTION | 290.00 | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes  to | | 510. City/town taxes  to | |
| 211. County taxes  to | | 511. County taxes  to | |
| 212. Assessments  to | | 512. Assessments  to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 116,290.00 | 520. Total Reduction Amount Due Seller | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross Amount due from borrower (line 120) | 110,696.55 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | ( 116,290.00) | 602. Less reductions in amt. due seller (line 520) | ( ) |
| 303. Cash ☐ From ☒ To Borrower | 5,593.45 | 603. Cash ☐ To ☐ From Seller | 0.00 |

| L. Settlement Charges | | | | | Paid From Borrowers' Funds at Settlement | Paid From Sellers' Funds at Settlement |
|---|---|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price $ | | | @ | % = | | |
| Division of Commission (line 700) as follows: | | | | | | |
| 701. $ | | to | | | | |
| 702. $ | | to | | | | |
| 703. Commission paid at Settlement | | | | | | |
| 704. | | | | | | |
| 800. Items Payable In Connection With Loan | | | | | | |
| 801. Loan Origination Fee | 0.0000 | % | to Capital One Home Loans, LLC | | | |
| 802. Loan Discount | 1.0000 | % | to Capital One Home Loans, LLC | | 1,160.00 | |
| 803. Appraisal Fee | | to | Capitol Commonwealth Apprsl Grp Inc | 350.00 | p.o.c. | |
| 804. Credit Report | | to | Credco | | | |
| 805. Lender's Inspection Fee | | | to C & S Marketing | | | |
| 806. Mortgage Insurance Application Fee to | | | | | | |
| 807. Assumption Fee | | | | | | |
| 808. Application/Closing Fee | | | to Capital One Home Loans, LLC | | 500.00 | |
| 809. | | | | | | |
| 810. | | | | | | |
| 811. Life of Loan Flood Cert. | | | to First American Flood Data Services | | | |
| 812. Tax Service Fee | | | to Capital One Home Loans, LLC | | | |
| 813. Underwriting Fee | | | to Capital One Home Loans, LLC | | | |
| 814. Processing Fee | | | to Capital One Home Loans, LLC | | | |
| 815. Doc Prep Fee | | | to Capital One Home Loans, LLC | | | |
| 816. Initial Flood Determinati | | | to First American Flood Data Services | | 6.00 | |
| 817. Direct Mtg Broker Fee | | | | | | |
| 900. Items Required By Lender To Be Paid In Advance | | | | | | |
| 901. Interest from | to | | @$ | /day | | |
| 902. Mortgage Insurance Premium for | | | months to | | | |
| 903. Hazard Insurance Premium for | | 1 years to | Allstate | 1,022.00 | p.o.c. | |
| 904. | | | years to | | | |
| 905. | | | | | | |
| 1000. Reserves Deposited With Lender | | | | | | |
| 1001. Hazard insurance | | months@$ | | per month | | |
| 1002. Mortgage insurance | | months@$ | | per month | | |
| 1003. City property taxes | | months@$ | | per month | | |
| 1004. County property taxes | | months@$ | | per month | | |
| 1005. Annual assessments | | months@$ | | per month | | |
| 1006. | | months@$ | | per month | | |
| 1007. | | months@$ | | per month | | |
| 1008. | | months@$ | | per month | | |
| 1009. | | | | | | |
| 1100. Title Charges | | | | | | |
| 1101. Settlement or closing fee | | to | Capital One Settlement Services | | 275.00 | |
| 1102. Abstract or title search | | to | Title Agency | | | |
| 1103. Title examination | | to | LandAmerica Onestop | | | |
| 1104. Title insurance binder | | to | LandAmerica OneStop | | | |
| 1105. Document preparation | | to | Document Preparer Company | | | |
| 1106. Notary fees | | to | | | | |
| 1107. Attorney's fees | | to | | | | |
| (includes above items numbers: | | | | ) | | |
| 1108. Title insurance | | to | LandAmerica Onestop | | 130.00 | |
| (includes above items numbers: | | | | ) | | |
| 1109. Lender's coverage | | $ | 116,000.00 | premium: 130.00 | | |
| 1110. Owner's coverage | | $ | | | | |
| 1111. Payoff Delivery Fee | | | Title Company | | | |
| 1112. Express Mail Charges | | | Capital One Settlement Services | | 50.00 | |
| 1113. Title Curative Fee | | | Title Agency | | | |
| 1200. Government Recording and Transfer Charges | | | | | | |
| 1201. Recording fees: Deed $ | | ; Mortgage$ | 109.00 ; Releases $ | | 109.00 | |
| 1202. City/county tax/stamps: Deed $ | | ; Mortgage $ | | | 290.00 | |
| 1203. State tax/stamps: Deed $ | | ; Mortgage $ | | | 898.00 | |
| 1204. Assignment Mortgage/DOT | | | Capital One Home Loans, LLC | | 25.00 | |
| 1205. Mortgage Cert Fee | | | | | | |
| 1300. Additional Settlement Charges | | | | | | |
| 1301. Survey | to | | | | | |
| 1302. Pest inspection | to | | | | | |
| 1303. Overnight Courier Fees | | | | | | |
| 1304. Automated Underwriting | | | Capital One Home Loans, LLC | | | |
| 1305. Funding Fee | | | Capital One Home Loans, LLC | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | | | 3,443.00 | |

Michael K. Carbone    3-23-06

Michael K. Carbone

                      3-23-06

Janine M. Carbone

# EXHIBIT C



P.O. Box 24610
Oklahoma City, OK 73124-0610





**NOTICE OF SERVICING TRANSFER**

The servicing of your mortgage loan has been transferred, effective November 01, 2014. This means that after this date, a new servicer is now responsible for collecting your mortgage loan payments from you. Nothing else about your mortgage loan has changed as a result of the transfer.

HSBC MORTGAGE SERVICES INC was collecting your payments prior to November 01, 2014. HSBC MORTGAGE SERVICES INC, will stop accepting payments received from you after October 31, 2014.

Your new servicer, Caliber Home Loans, Inc., will collect your payments going forward. Caliber Home Loans, Inc. started accepting payments received from you on November 01, 2014.

**Send all payments due on or after November 01, 2014 to Caliber Home Loans, Inc., at this address: P.O. Box 650856 Dallas, TX 75265-0856.**

If you have any questions for either your prior servicer, HSBC MORTGAGE SERVICES INC or your new servicer, Caliber Home Loans, about your mortgage loan or this transfer, please contact them using the information below:

Prior Servicer:

HSBC MORTGAGE SERVICES INC
Customer Service
800-333-7023
P.O. BOX 1231
BRANDON, FL 33509

New Servicer:

Caliber Home Loans
1-800-570-6768
P.O. Box 24610
Oklahoma City, OK 73124

Important note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, premiums will not be transferred to Caliber Home Loans, Inc. and will be discontinued. Please contact the provider of the optional insurance or other membership product(s) directly regarding your continuation privileges, if applicable.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your prior servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

Caliber Home Loans, Inc.                                                11/10/14

# EXHIBIT D

REDACTED

CALIBER
HOME LOANS

P.O. Box 24610
Oklahoma City, OK 73124-0610

December 18, 2014

JANINE M CARBONE
3388 MAPLEWOOD DRIVE SOUTH
WANTAGH        NY 11793-3425

Caliber Account Number:        6212

## YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING NOTICE CAREFULLY.

As of December 18, 2014, your home loan is 716 days in default. Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home. You can cure this default by making the payment of $97619.70 by 03/23/15.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home. Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling. You should consider contacting one of these agencies immediately.

These agencies specialize in helping homeowners who are facing financial difficulty. Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance. If you wish, you may also contact us directly at 1-800-621-1437 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution. The longer you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Service's toll-free helpline at 1-800-269-0990 or visit the Department's website at http://www.dfs.ny.gov.

If you have any questions, please contact our office at 800-621-1437. Our hours are 8:00 a.m. to 9:00 p.m., Central Time, Monday through Thursday; 8:00 a.m. to 7:00 p.m., Central Time, Friday; and 8:00 a.m. to 4:00 p.m., Central Time on Saturday.

Sincerely,
Kawanna Coppage
Vice President

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.**

# EXHIBIT E

REDACTED



**CALIBER HOME LOANS**

P.O. Box 24610
Oklahoma City, OK 73124-0610

June 10, 2015

JANINE M CARBONE
3388 MAPLEWOOD DRIVE SOUTH
WANTAGH        NY 11793-3425

Caliber Account Number:        6212

Dear Borrower:

The above referenced loan is in default because you have failed to pay the required monthly installments as you promised to do when you signed the Note and Mortgage.

Cure of default: You may cure your default on or before July 15, 2015 by sending the total amount of $ 118,102.80. You may also cure the default by completing, and having approved, a loan modification or repayment agreement which may be arranged through Caliber Home Loans, Inc. ("Caliber") by contacting the Collections Department at the address referenced above. If you cure the default, you will have the right to have the enforcement of the security instrument stopped and can then continue with your contractual obligations as though you did not default.

Creditor's rights: If you do not cure your default in the time allowed, by taking action as stated above, the creditor may exercise any or all remedies provided by law and in your Note. These remedies may include a demand for immediate payment in full and foreclosure on the real property securing the loan, which may result in the lender or another person acquiring the property by means of foreclosure and sale. You may be held personally liable under applicable state law for any deficiency balance not satisfied from the sale of the property.

You have the right in any lawsuit for foreclosure and sale to argue that you did keep your promises and agreements under the note and mortgage and you are entitled to present any other defenses that you may have.

If this default is not cured, Caliber will report the defaulted loan to any appropriate credit-reporting agency.

If this default was caused by your failure to make payments and you now want to pay the past due amount by mail, you must send a certified check, money order or cashier's check. DO NOT SEND CASH.

If you are unable to cure the default due to an involuntary loss of employment or other reasons, counseling assistance may be available to you from certain agencies that are HUD-approved mortgage-counseling agencies. You may contact Caliber to obtain the name of the mortgage-counseling agency that is closest to you.

REDACTED

If you have any questions, please contact our office at 800-621-1437.  Our hours are 8:00 am to 9:00 pm, Central Time, Monday through Thursday, 8:00 am to 7:00 pm, Central Time, Friday and 8:00 am to 4:00 pm, Central Time on Saturday.

Sincerely,

Account Resolution Department
Caliber Home Loans, Inc.

UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS LETTER THAT THE DEBT, OR ANY PART OF IT, IS DISPUTED, WE WILL ASSUME THAT THE DEBT IS VALID.  IF YOU DO NOTIFY US OF A DISPUTE, WE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL IT TO YOU.  ALSO, UPON YOUR REQUEST, WITHIN THIRTY (30) DAYS, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR.

THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

7.49              20140325rev              2