**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ASHFAQ HUSSAIN,<br>on behalf of plaintiff and others similarly<br>situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | Cause No. 1:17-cv-625-TWP-MPB |
| vs. | ) ) | |
| LSF 9 MASTER PARTICIPATION TRUST;<br>CALIBER HOME LOANS, INC.; and<br>U.S. BANK TRUST, N.A., as Trustee of<br>LSF9 MASTER PARTICIPATION TRUST; | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT  – CLASS ACTION

### INTRODUCTION

1.      Plaintiff Ashfaq Hussain brings this action to secure redress from unlawful collection practices engaged in by defendants  LSF9 Master Participation Trust ("LSF9"), Caliber Home Loans, Inc. ("Caliber"), and U. S. Bank Trust, N.A., as Trustee of LSF9 ("USB"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA").

2.      The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt. It also requires debt collectors to give debtors certain information.  15 U.S.C. §§1692e, 1692f and 1692g.

3.      In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692(a).

4.      Because of this, courts have held that "the FDCPA's legislative intent emphasizes

1

the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008)

5.      The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

6.      Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq*.

<u>**VENUE AND JURISDICTION**</u>

7.      This Court has jurisdiction under 15 U.S.C. § 1692k (FDCPA), 28 U.S.C. §1331, 28 U.S.C. §1337, and  28 U.S.C. §1367.

8.      Venue and personal jurisdiction in this District are proper because  defendants' communications were received by plaintiff within this District.

<u>**PARTIES**</u>

9.      Plaintiff Ashfaq Hussain is an individual who lives in Noblesville, Indiana.

10.     Defendant LSF9 is a Delaware statutory trust.  Its registered agent and office is U.S. Bank Trust National Association, 300 Delaware Avenue, 9th floor, Wilmington, DE 19801.

11.     Defendant LSF9 was formed for the principal purpose of acquiring, collecting and enforcing defaulted residential mortgage loans.  All of the loans it acquired were then delinquent or in default. It began operations in 2014 by acquiring a pool of over $3 billion in delinquent mortgages that had been taken over by the FHA and has since acquired other large pools of delinquent mortgage loans.

12.     Defendant Caliber is a Delaware corporation with offices at 3701 Regent Blvd., Suite 200, Irving, Texas.  It does business in Indiana.  Its registered agent and office is CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, Indiana 46204.

13.     Caliber is a "special servicer" of residential mortgage loans and seeks rating as

2

such from rating agencies such as Fitch and S&P in order to obtain "special servicing" business. Caliber advertises its ratings on its web site.

14.　　In mortgage industry jargon, a "special servicer" is a servicer that specializes in handling delinquent and defaulted mortgage loans.

15.　　According to S&P's rating opinion, Caliber serviced $32 billion in residential loans as of August 31, 2013.   As of June 20, 2013, when the total balance was less, it was servicing over 92,000 loans.

16.　　Caliber regularly acquires servicing of loans that are delinquent or in default at the time of such acquisition.  On information and belief, it has over 4500 such loans.

17.　　Caliber acquires servicing of portfolios or groups of similar loans, rather than individual loans.

18.　　Caliber uses the mails and telephone system to collect such debts.

19.　　Caliber is a debt collector as defined in 15 U.S.C. §1692a(6).

20.　　On information and belief, Caliber acted as agent for  LSF 9  in connection with the matters complained of herein, and is the party who actually performed the acts attributed to such defendant.

21.　　Defendant USB is a federally-chartered corporation with  offices at 300 East Delaware Avenue, 8th Floor, Wilmington, Delaware 19809, and 111 SW Fifth Ave., Portland, Oregon 97204.  It is trustee of LSF9.

22.　　LSF9, or USB (as trustee), have enforced the defaulted loans held by LSF9 through judicial and non-judicial foreclosures and other means.  In some cases the loans are enforced directly, as by filing suit in the name of LSF9 or USB as trustee.  Scores of such suits have been filed in various jurisdictions.  In other cases, the loans are enforced indirectly by Caliber collecting them, in the names of LSF9 or USB as trustee.

## FACTS

23.　　This action concerns the servicing and collection of an alleged residential

3

mortgage loan debt incurred for personal, family or household purposes.

24.    Plaintiff obtained a residential mortgage loan in 1994 to finance the purchase of his primary residence.

25.    Plaintiff refinanced the loan in 2003.

26.    Plaintiff and his wife lived in the residence through 2007, after which they maintained the home as a rental property without refinancing the loan.

27.    In 2014 Federal National Mortgage Association was servicing the loan.

28.    On information and belief, in 2014 Federal National Mortgage Association owned plaintiff's loan.

29.    In July 2016, Federal National Mortgage Association accelerated the loan and commenced a foreclosure lawsuit in its name.

30.    The loan was in default when defendants first had any involvement with it.

31.    On or about September 12, 2016, plaintiff was sent the "notice of servicing transfer" attached as Exhibit A, by the prior servicer.

32.    On or about October 11, 2016, Caliber sent plaintiff the "transfer of servicing" notice attached as Exhibit B directing plaintiff to contact Caliber as of October 1, 2016.

33.    On or about October 14, 2016, Caliber sent plaintiff the notice attached as Exhibit C.

34.    Exhibit C was the document intended to comply with 15 U.S.C. §1692g.

35.    Exhibit C is a form document.

36.    The note, mortgage and a modification agreement relating to the debt at issue are are attached as Exhibits D-F.

### COUNT I – FDCPA – CLASS CLAIM

37.    Plaintiff incorporates paragraphs 1-36.

38.    This claim is against LSF9, Caliber and USB.

39.    Defendants violated 15 U.S.C. §§1692e, 1692e(2), 1692e(10), 1692f, 1692f(1)

and 1692g because <u>Exhibit C</u> (i) implies that recipients must pay for a pay-off statement in order
to get information required by §1692g (ii) states that a dispute must be in writing when it says "if
you dispute the debt, please contact us in writing. . . ," and (iii) is confusing in that it tells the
recipient to send a request for verification to the "above address" when the correct address for
such purpose is listed below in the letter.

40.     Section 1692g provides:

**§ 1692g.  Validation of debts**

**(a) Notice of debt; contents.  Within five days after the initial communication
with a consumer in connection with the collection of any debt, a debt
collector shall, unless the following information is contained in the initial
communication or the consumer has paid the debt, send the consumer a
written notice containing--**

**(1) the amount of the debt;**

**(2) the name of the creditor to whom the debt is owed;**

**(3) a statement that unless the consumer, within thirty days after
receipt of the notice, disputes the validity of the debt, or any portion
thereof, the debt will be assumed to be valid by the debt collector;**

**(4) a statement that if the consumer notifies the debt collector in
writing within the thirty-day period that the debt, or any portion
thereof, is disputed, the debt collector will obtain verification of the
debt or a copy of a judgment against the consumer and a copy of such
verification or judgment will be mailed to the consumer by the debt
collector; and**

**(5) a statement that, upon the consumer's written request within the
thirty-day period, the debt collector will provide the consumer with
the name and address of the original creditor, if different from the
current creditor.**

**(b) Disputed debts.  If the consumer notifies the debt collector in writing
within the thirty-day period described in subsection (a) that the debt, or any
portion thereof, is disputed, or that the consumer requests the name and
address of the original creditor, the debt collector shall cease collection of the
debt, or any disputed portion thereof, until the debt collector obtains
verification of the debt or a copy of a judgment, or the name and address of
the original creditor, and a copy of such verification or judgment, or name
and address of the original creditor, is mailed to the consumer by the debt
collector. Collection activities and communications that do not otherwise
violate this title may continue during the 30-day period referred to in
subsection (a) unless the consumer has notified the debt collector in writing
that the debt, or any portion of the debt, is disputed or that the consumer**

requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(c) Admission of liability.  The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

(d) Legal pleadings.  A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

(e) Notice provisions.  The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [*26 USCS §§ 1* et seq.], title V of Gramm-Leach-Bliley Act [*15 USCS §§ 6801* et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

41.     Section 1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(2) The false representation of–

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

42.     Section 1692f provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

43.     As a result, Plaintiff suffered informational injury, in that he was deprived of accurate information, and provided inaccurate information about the exercise of his rights as required by the FDCPA.

## CLASS ALLEGATIONS

44.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

45.     The class consists of (a) all individuals (b) who were sent a document in the form represented by Exhibit C on or after August 13, 2016 and on or before a date 20 days after the filing of this action.

46.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the use of form, bar-coded documents, and the size of the portfolios acquired by defendants, there are over 40 members of the class.

47.     There are questions of law and fact common to the class, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Exhibit C:

    a.      implies that a recipient must pay for a pay-off statement in order to get information required by §1692g;

    b.      states that a demand for verification must be in writing, and

    c.      is confusing in that it tells the recipient to send a request for verification to the "above address" when the address is listed below in the letter.

48.     Plaintiff's claims are typical of the claims of the class members. All are based on the same common questions of law and fact.

49.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

50.     A class action is superior for the fair and efficient adjudication of this matter, in that:

7

       a.       Individual actions are not economically feasible.

       b.       Members of the class are likely to be unaware of their rights;

       c.       Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class members and against defendants for:

       i.       Statutory damages;

       ii.       Attorney's fees, litigation expenses and costs of suit;

       iii.       Such other and further relief as the Court deems proper.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Michelle A. Alyea
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Robert E. Duff
Indiana Consumer Law Group/The Law Office of Robert E. Duff
Post Office Box 7251
Fishers, IN 46037
(800) 817-0461
(800) 817-0461 (FAX)

## **NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been assigned to counsel.


/s/ Daniel A. Edelman
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/ Daniel A. Edelman
Daniel A. Edelman

**<u>CERTIFICATE OF SERVICE</u>**

      I, Daniel A. Edelman, certify that on May 8, 2016, I caused a true and accurate copy of the foregoing document to be served to all counsel of record via the Court's CM/ECF system.


                                      <u>/s/ Daniel A. Edelman</u>
                                      Daniel A. Edelman

11